IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| Melvin Ford (M-48792), | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Case No. 18 C 50151 |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| City of Rockford, et al., | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion to reconsider [28] is denied for the reasons set forth below. As Plaintiff has failed to state a claim on which relief may be granted, this action is dismissed with prejudice, and final judgment shall enter. This dismissal is within the meaning of 28 U.S.C. § 1915(g). Civil case terminated.

## STATEMENT

Plaintiff Melvin Ford, a prisoner in the custody of the Illinois Department of Corrections, brought this *pro se* civil rights action under 42 U.S.C. § 1983, regarding his March 5, 2017 arrest, prosecution, and incarceration following the death of a toddler he was babysitting. On October 2, 2018, in a detailed order, the Court dismissed his complaint but gave him leave to file an amended complaint by December 17, 2018. (Dkt. 19.) Instead, after multiple extensions of time (Dkt. 21, 25, 27), Plaintiff moved for reconsideration, arguing that, although he did not know it at the time, he had in fact "stated a claim for due process violations." (Dkt. 28, pg. 1.) That motion is before the Court, as is Plaintiff's letter (Dkt. 30), in which he indicates that, although he was to be temporarily absent for a court writ, he would be returned to Big Muddy by May 1, 2019, and the Court should continue to direct all mail there.

The Court first notes that, "when this Court gave Plaintiff leave to file an amended complaint, it was not inviting him to file a motion to reconsider its dismissal of the original complaint," *Martin v. Wendy's Int'l, Inc.*, No. 15 C 6998, 2017 WL 1545684, at *2 (Apr. 28, 2017), as Plaintiff has done. *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (explaining that rulings of district court are not to be viewed "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure"). Motions to reconsider are "disfavored" and "'serve a limited function to correct manifest errors of law or fact or to present newly discovered evidence.'" *Ill. Transp. Trade Ass'n v. City of Chicago*, No. 14 cv 827, 2016 WL 1623206, at *1 (N.D. Ill. Apr. 25, 2016), *aff'd in part, rev'd in part,* 839 F.3d 594 (7th Cir. 2016) (citations omitted); *see Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (similar). Such "manifest errors" occur "when a district court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Ill. Transp.*

*Trade Ass'n*, 2016 WL 1623206, at *1 (citation omitted). As Plaintiff does not disclose newly discovered evidence, the Court understands him to suggest that there was an error of law or fact.

The Court assumes familiarity with its screening order of October 2, 2018, in which the facts and legal analysis are set forth in greater detail. (Dkt. 19.) In brief, during the early morning hours of March 5, 2017, Plaintiff reported to emergency services that a toddler in his care was unresponsive after he left her unattended in the bathtub, and a firefighter on the scene reported to police officers that he had observed what he believed to be burn marks on the toddler's body as she was being removed. Against Plaintiff's desire but without restraints or a formal notification of arrest, officers transported Plaintiff to the police station for questioning that terminated when he requested an attorney. As Plaintiff had been unable to arrange alternate childcare, officers took his four young children to the Carrie Lynn Children Center, where they were interviewed regarding the toddler's "suspicious" death. None of Plaintiff's children had witnessed the toddler's death, but they reported past uses of force by Plaintiff, including Plaintiff hitting his young son with a belt buckle, causing a scar.

At 2:40 p.m., Plaintiff was arrested and charged for the belt buckle beating of his son, a Class X felony, and taken to the Winnebago County Jail. A juvenile court judge ordered Plaintiff to have no contact with his children. On December 28, 2017, a grand jury indicted Plaintiff for a Class 3 felony for endangering the life of a child, as to the March 5 drowning death of the toddler he was babysitting. Plaintiff pleaded guilty to that Class 3 felony, in exchange for the dismissal of the Class X felony charges for hitting his son with a belt buckle. Plaintiff is serving a seven-year sentence as to the Class 3 felony. Examining whether Plaintiff's allegations implicated protections set forth in the Fourth Amendment and the Due Process Clause, the Court found that the complaint, levied against multiple police officers, failed to state a claim on which relief may be granted.

The Court understands Plaintiff to argue this was an error of law or fact. He levels two challenges to the Court's decision--(1) "his presence [at the police station] escalated to an involuntary seizure when he demanded to be let go since arriving at the police station," (Dkt. 28, pgs. 3-5); and (2) his seizure was in fact a pretext to allow officers to "illegal[ly]" interview his children (*id.*, pgs. 5-8). Neither demonstrates a manifest error of law or fact.

First, Plaintiff argues that he was "seized" only after he reached the police station and sought to leave, which he insists is contrary to police records suggesting that he was not formally arrested until 2:40 p.m. But the Court in its order, acknowledging the analysis set forth in *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015), had assumed for the purposes of its screening order that Plaintiff was involuntarily seized (that a reasonable person would not have believed he was free to leave) well before then--from the time he was allegedly placed against his wishes into a police car outside his home with the doors closed. (Dkt. 19, pgs. 4-5.) The Court's presumption thus was *more favorable* to him than the seizure timeline Plaintiff advocates. He thus has not shown that the Court made a manifest error of law in examining the alleged timing of his seizure.

Second, as the Court explained, Plaintiff's seizure, whenever it occurred, was unlawful only if it was unreasonable, in other words, if police officers lacked probable cause to believe he

2

had committed a crime. (Dkt. 19, pg. 5.) "Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907-08 (7th Cir. 2018) (citations omitted). A police officer has probable cause to arrest a suspect when the facts and circumstances known to the officer at the time of the arrest would cause a reasonable person to believe that the suspect has committed a crime. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). While Plaintiff may believe that officers had ulterior motives in detaining him, their subjective intent is not determinative in the Fourth Amendment analysis, which focuses on the objective reasonableness of their actions. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[Arresting officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 n.3 (7th Cir. 2013) (explaining that warrantless arrest "may be supported by probable cause that the arrestee committed *any* offense, regardless of which crime was charged or which crime the officer thought had been committed") (emphasis in original)); *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that Fourth Amendment analysis focuses on objective reasonableness, not subjective motivations of police officers); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[S]o long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest is flawed."); *Hart v. O'Brien*, 127 F.3d 424, 447 (5th Cir. 1997) ("Even if Conine was the primary target of the investigation and Hart's arrest were merely pretextual, the lawfulness of Hart's arrest does not depend on the actual motivations of the arresting officers.").

Based upon the facts in the complaint and its attachments, including references to possible burn marks on a dead toddler Plaintiff had left alone in water, officers had several reasons to believe that probable cause supported Plaintiff's seizure at the time. (*See* Dkt. 19, pg. 5 (citing *Garner v. Grant*, 328 F. App'x 325, 327 (6th Cir. 2009) affirming conclusion that, as a matter of law, officers had probable cause to arrest caretaker of mobile child where caretaker "'zoned out' for a period of time" after having opened sliding door leading to in-ground pool)). This distinguishes the alleged facts of this case from the impermissible "imprisonment on suspicion, while police look for evidence to confirm their suspicion." *County of Riverside v. McLaughlin*, 500 U.S. 44, 68 n.3 (1991) (quoting *Llaguno v. Mingey*, 763 F.2d 1560, 1568 (7th Cir. 1985)). That officers while Plaintiff was in custody also discovered a second offense does not vitiate pre-existing probable cause for another offense. This does not indicate an improper pre-trial detention.

The Court also discerns no apparent error of law as to its analysis regarding Plaintiff's children. As the Court explained, a violation of Plaintiff's *children's* rights does not state a claim on behalf of *Plaintiff*. He cannot represent his children as to any purported violation of their rights. *Foster v. Bd. of Educ. of City of Chicago*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting cases and explaining that Seventh Circuit has "repeatedly held that the rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent [his] minor child *pro se*"); *Bentz v. Butler*, No. 14-CV-00996-NJR, 2015 WL 1361013, at *1 (S.D. Ill. Mar. 23, 2015) (citing *Nocula v. Tooling Sys. Int'l Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) ("Although individuals may represent themselves in federal court, *pro se* litigants and non-lawyers cannot represent other individuals.").

In arguing the contrary, Plaintiff relies upon inapposite cases, which analyze whether minor children's confessions to crimes should be suppressed in criminal cases where their interested relatives or guardians were kept form meeting with them during or prior to the confessions, in arguing that the interviews with his children were "illegal." *See People v. Griffin*, 763 N.E. 2d 880, 887-890 (Ill. App. 2002); *People v. McDaniel*, 762 N.E.2d 1086, 1095-99 (Ill. App. 2001); In re J.J.C., 689 N.E.2d 1172 (Ill. App. 1998); *In re Lashun H.*, 672 N.E.2d 331, 335-39 (Ill. App. 1996); *In re J.O.*, 596 N.E.2d 1285 (Ill. App. 1992). Here, even if Plaintiff could pursue a challenge to any violation to his children's rights, if one occurred, there is no indication that the children were suspects as to any crime or that any child confessed to one. The suppression analysis Plaintiff references is irrelevant here.

Police officers' conduct after Plaintiff's apparently lawful seizure also did not "terminate[] Plaintiff's parental rights" for several hours, as he argues. (Dkt. 28, pg. 8.) *See A.G. v. City of Park Rigge*, 198 F. Supp. 3d 856, 861 n.5 (N.D. Ill. 2016) (collecting cases holding that "if the decision to seize parents was reasonable, then the decision to detain the child too is reasonable"); *see Pittman v. City of New York*, No. 14-CV-4140 (ARR0(RLM), 2014 WL 7399308, at *4 (E.D.N.Y. Dec. 30, 2014) ("Minors detained in relation to a parent's arrest, absent suspicion of criminal activity, are not subject to the requirement of probable cause under a false arrest claim."). Certainly, it is questionable whether parental rights could be "terminated" for just a few hours. In any event, as Plaintiff specifically alleged in his complaint, a state court judge terminated his custody or parental rights after he was charged, and he had had no contact with his children thereafter. The alleged facts permitted no inference that police officers' actions were aimed at affecting Plaintiff's parental relationship with his children. (Dkt. 19, pgs. 6-8.) *See Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005) (noting that "plaintiffs in this case have not alleged that Watts shot Russ for the specific purpose of terminating Russ's relationship with his family" and expressing concern that "[a]ffording plaintiffs a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individuals who happen to have families"). *See also United States v. Hollingsworth*, 495 F.3d 795, 802-03 (7th Cir. 2007) ("[T]he government's interest in speaking with T.H. was compelling because it had at least some reason to believe that [child's parent] was engaged in illegal activity.").

Plaintiff's insistence that the Court erred in dismissing the original complaint indicates his intent to stand on the original complaint, rather than submit an amendment. As Plaintiff's amended complaint "include[s] virtually no additional facts that might be relevant to his [intended] claims," and the Court therefore sees no reason "to revisit its earlier analysis" except to the extent set forth above. *See Martin*, 2017 WL 1545684, at * 5. As the Court gave Plaintiff an opportunity to amend but has not received an actionable pleading, this case is dismissed for failure to state a colorable federal claim. *See Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995) ("[I]f a plaintiff fails to properly allege a claim for relief brought under a federal statute, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6)[.]"). The dismissal is without prejudice to Plaintiff's ability to litigate any state law claims before a proper tribunal. The Court offers no opinion as to whether Plaintiff should do so or the merits of any potential claims he may have. The dismissal of this case counts as a dismissal under 28 U.S.C. § 1915(g).

Final judgment will be entered. If Plaintiff wants to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal so that he may pay the appellate filing fee in installments, he must file a motion seeking leave to do so in this Court. *See* Fed. R. App. P. 24(a)(1). His motion must include his intended grounds for appeal. If the appeal is found to be non-meritorious, Plaintiff could be assessed another "strike" under 28 U.S.C. § 1915(g). If Plaintiff accumulates three dismissals under 1915(g), he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

Date: May 7, 2019